**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:12CV-00322-JHM**

**CRYSTAL STEVENS and ERIC STEVENS**　　　　　　　　　　　　　　**PLAINTIFF**

v.

**MEDTRONIC, INC., MEDTRONIC SOFAMOR**
**DANEK USA, INC., NORTON HOSPITALS, INC.**
**d/b/a NORTON HOSPITAL, and JOHN DOE #1, A**
**Sales Representative for Medtronic, Inc.**　　　　　　　　　　　　　　**DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447(c) [DN 8]. Fully briefed, the matter is ripe for decision.

**I. BACKGROUND**

On May 10, 2012, Plaintiffs, Crystal Stevens and Eric Stevens, filed this action in the Jefferson Circuit Court. The Complaint asserts claims arising out of the posterior spinal surgery of Crystal Stevens (hereinafter Stevens or "Plaintiff") on September 13, 2006, at Norton Hospital in Louisville, Kentucky. Stevens underwent a posterior lumbar interbody fusion of her L4-5 and L5-S1 during which she was implanted with Infuse, a bone graft device manufactured by the Medtronic Defendants. Plaintiff alleges that she was not informed prior to surgery that Infuse would be used in her spine in an "off-label or experimental manner" or "that there were any risks specific to the use of Infuse in the lumbar spine." (Complaint ¶ 38-41.) Plaintiff alleges that Infuse was approved by the FDA in 2002 for only one specific operation which was an anterior single level fusion using an LT Cage and it was not approved for the posterior-approach lumbar spine surgery performed on Stevens. Plaintiff asserts claims of fraud, negligent misrepresentation, strict products liability manufacturing and design defects, failure to warn, negligence, breach of implied warranty, breach

of express warranty, failure to obtain informed consent, and violation of the Kentucky Consumer Protection Act against the Medtronic Defendants. Plaintiff also asserts claims against Defendant Norton Hospital for negligence, failure to obtain informed consent, and negligent misrepresentation. (Complaint ¶¶ 85, 93-97, 96-104.) Eric Stevens asserts a claim for loss of consortium against the Defendants.

On June 8, 2012, Defendants removed this action from the Jefferson Circuit Court to this Court on the theory that Plaintiffs had fraudulently joined Defendant Norton Hospital in an effort to defeat federal jurisdiction. Plaintiffs now move the Court to remand the case to the Jefferson Circuit Court.

## II. STANDARD OF REVIEW

At issue in this motion is whether Norton Hospital was fraudulently joined. "'Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action.'" Walker v. Philip Morris USA, Inc., 443 Fed. Appx. 946, 952 (6th Cir. Oct. 31, 2011)(quoting Saginaw Housing Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir. 2009)). "The non-moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to our determination regarding fraudulent joinder.'" Id. (quoting Jerome–Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999)). The burden is on the Defendants to show fraudulent joinder, and as with any dispute over removal, all doubts are resolved in favor of remand. Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999); Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir.1994).

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state

law." Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir.1999). "Therefore the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." Probus v. Charter Communications, LLC, 234 Fed. Appx. 404, 407 (6th Cir. 2007)(internal citation omitted). See also Walker, 443 Fed. Appx. at 952. In making this determination, the Sixth Circuit recognizes that the district court may "pierce the pleadings and conduct a summary inquiry" to determine whether the a plaintiff's complaint has misstated or omitted "*discrete and undisputed facts*" that would determine the propriety of joinder. Walker, 443 Fed. Appx. at 953 (citation omitted). However, this standard of review is not as broad as suggested by Defendants. In adopting the approach articulated by the Fifth Circuit, the Sixth Circuit in Walker stated in relevant part:

> [A]lthough the fraudulent joinder and Rule 12(b)(6) standards appear similar, the scope of the inquiry is different. For Rule 12(b)(6) motions, a district court may only consider the allegations in the complaint and any attachments. For fraudulent joinder, the district court may . . . "pierce the pleadings" and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor.* The burden of persuasion on those who claim fraudulent joinder is a heavy one.

Id. (quoting Travis v. Irby, 326 F.3d 644, 648–49 (5th Cir. 2003)). Therefore, "[w]hen deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." Casias v. Wal-Mart Stores, Inc., — F.3d —, 2012 WL 4096153, *3(6th Cir. September 19, 2012)(citing Walker, 443 Fed. Appx. at 952–54)).

### III. DISCUSSION

Plaintiffs argue that the instant case should be remanded because the Medtronic Defendants

have failed to prove the fraudulent joinder of Norton Hospital, the non-diverse forum-defendant. The Medtronic Defendants, on the other hand, contend that Norton Hospital was fraudulently joined because (1) "Plaintiffs' utterly conclusory and boilerplate references to Norton Hospital in the Complaint provide no basis for recovery against Norton Hospital" and (2) Plaintiffs' claims against Norton Hospital are barred by the applicable one-year Kentucky statute of limitations. (Medtronic Defendants' Response at 2.)

**A. Colorable Claim for Negligence**

A negligence action requires: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." Mullins v. Commonwealth Life Ins. Co., 839 S.W.2d 245, 247 (Ky.1992). In a medical malpractice case, the burden of proof is upon the plaintiff to establish the applicable standard of care and the breach thereof by medical or expert testimony. Green v. Owensboro Medical Health Sys., Inc., 231 S.W.3d 781, 783 (Ky. Ct. App. 2007); Vandevelde v. Poppens, 552 F. Supp. 2d 662, 668 (W.D. Ky. 2008). A hospital, such as Norton Hospital, has a duty to use the same degree of care and skill as would be expected of a reasonably competent hospital in similar circumstances. See, e.g., Miller ex rel. Monticello Baking Co. v. Marymount Medical Center, 125 S.W.3d 274, 286 (Ky. 2004). Further, Kentucky recognizes that the failure to obtain informed consent is an actionable form of negligence. Cordle v. Merck & Co., Inc., 405 F. Supp. 2d 800, 804 (E.D. Ky. 2005)(citing Hawkins v. Rosenbloom, 17 S.W.3d 116, 118-19 (Ky. Ct. App.1999)); see also Keel v. St. Elizabeth Medical Center, 842 S.W.2d 860, 862 (Ky. 1992); Rogers v. T.J. Samson Community Hosp., 276 F.3d 228, 234 (6th Cir. 2002).

Plaintiffs' Complaint states a colorable claim for negligence against Norton Hospital. Plaintiff alleges that on September 13, 2006, she was admitted to Norton Hospital for spine surgery

to address chronic lower back pain; that Norton Hospital "by and through its agents, servants and/or employees, ostensible agents, servants and/or employees undertook to provide appropriate medical care and treatment to Crystal Stevens and allowed Infuse to be used in its operating room;" and that Norton Hospital "allowed John Doe #1 to be present during the surgery of Crystal Stevens, and allowed John Doe #1 to provide advice, direction, and counsel to Crystal Stevens' surgeon." (Complaint ¶¶ 38, 85.) Plaintiff maintains that prior to the surgery the Defendants failed to inform her that Infuse would be used in the spine in an off-label or experimental manner and failed to inform her that there were any risks specific to the use of Infuse in the lumbar spine. (Complaint ¶¶ 10, 38-41, 93, 94.) Plaintiff further alleges that before and after the 2006 surgery using Infuse, Defendants knowingly concealed from Plaintiff the high risk of significant danger from using Infuse off-label. (Id. at ¶ 11.) Plaintiff alleges that she would not have consented to the off-label use of the product. (Id. at ¶ 46.) Finally, Plaintiff avers that she has suffered grievous personal injuries as a direct and proximate result of Defendants' misconduct. (Id. at ¶ 45.) While the Medtronic Defendants classify these allegations as "conclusory and boilerplate" and as insufficient to establish negligence under Kentucky law, the appropriate inquiry in this case is not whether Plaintiff will ultimately lose on the merits; rather, it is simply whether Plaintiff has "at least a colorable cause of action against [Norton Hospital] in the [Kentucky] state courts." Probus, 234 Fed. Appx. at 408 (6th Cir. 2007)(quoting Jerome-Duncan, Inc. v. Auto-By-Tel, LLC, 176 F.3d 904, 907 (6th Cir. 1999)). See also Sprowls v. Oakwood Mobile Homes, Inc., 119 F. Supp. 2d 694, 697 (W.D. Ky. 2000). Plaintiff's allegations state a colorable cause of action in negligence against Norton Hospital and provide a reasonable basis to predict that a Kentucky court might impose liability on Norton Hospital.

In as much as the Medtronic Defendants argue that Plaintiff's reference to "Defendants" is not sufficient to assert a claim against Norton Hospital, this argument has been rejected by Hart v. Fifth Third Bank, Inc., 2009 WL 3171950, *1 (W.D. Ky. Sept. 28, 2009)(citing Brewer Machine & Conveyor Mfg. Co., Inc. v. Old National Bank, 248 F.R.D. 478 (W.D. Ky. 2008)). The "use of the phrase 'Defendants' naturally incorporate[s] all defendants into the allegations made by the plaintiffs." Hart, 2009 WL 3171950, *2. Since Plaintiff has identified Norton Hospital as one of the Defendants involved in this case, all allegations against "Defendants" incorporate allegations against Norton Hospital.

Additionally, in its Notice of Removal, the Medtronic Defendants also argued that the claims against Norton Hospital are inconsistent with the allegations against the Medtronic Defendants and, as a result, demonstrate that the non-diverse defendants have been fraudulent joined. Specifically, the Medtronic Defendants note that the allegations against Norton Hospital "cannot be squared with Plaintiffs' own allegations throughout the Complaint that Medtronic actively *concealed* the risk of off-label uses of Infuse from health care providers, including her own physicians." (Notice of Removal at 8-9.) This argument is inconsistent with the pleading rules. Both the Kentucky and Federal Rules of Civil Procedure allow plaintiffs to enter alternative or inconsistent pleadings. Cordle, 405 F. Supp. 2d at 805-806; Smith v. Smithkline Beecham Corp., 2010 WL 3432594, *2 (E.D. Ky. August 30, 2010). Thus, in the present case, any inconsistencies or alternative pleadings against the Medtronic Defendants and Norton Hospital do not warrant a finding that Plaintiff failed to allege a colorable claim against Norton Hospital in state court. Cordle, 405 F. Supp. 2d at 806.

Accordingly, the Court finds that the Medtronic Defendants have failed to meet "the heavy burden of proving that there is not even arguably a reasonable basis for predicting Kentucky law

6

might impose liability" on Norton Hospital. Jones Body Shop, Inc. v. PPG Industries, Inc., 2012 WL 1984292, *2 (E.D. Ky. June 4, 2012.)

### B. Statute of Limitations

Under Kentucky law, an "action against a physician, surgeon, dentist, or hospital" for "negligence or malpractice" must be "commenced within one (1) year after the cause of action accrued." KRS § 413.140(1)(e). "The cause of action shall be deemed to accrue 'at the time the injury is first discovered or in the exercise of reasonable care should have been discovered.'" Elam v. Menzies, 594 F.3d 463, 466 (6th Cir. 2010)(citing KRS § 413.140(2)). In Kentucky, the discovery rule can toll a statute of limitations.

The Kentucky Supreme Court has defined the discovery rule as follows: "'A cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.'" Faulkner v. ABB, Inc., 2011 WL 1225697, *2 (W.D. Ky. 2011)(quoting Louisville Trust Co. v. Johns–Manville Prods. Corp., 580 S.W.2d 497, 501 (Ky.1979) (internal quotations omitted)). See also Elam, 594 F.3d at 466. The plaintiff must have a "basis for a claim before the statute of limitations begins to run." Elam, 594 F.3d at 466 (quoting Wiseman v. Alliant Hospitals, Inc., 37 S.W.3d 709, 712 (Ky. 2000)). The "knowledge necessary to trigger the statute is two-pronged; one must know: (1) he has been wronged; and (2) by whom the wrong has been committed." Id. "Although what the plaintiff actually knew often triggers discovery, the rule can also be satisfied by what the plaintiff should have known." Id. "In constructing knowledge, however, a court must give special consideration to the patient's perspective because '[o]ne who possesses no medical knowledge should not be held responsible for discovering an injury based on

the wrongful act of a physician.'" Id. (citing Wiseman, 37 S.W.3d at 712–13).

Both Kentucky law and federal procedural law used in diversity cases specify that "when there is a disputed issue of fact as to when a plaintiff 'discovered or should have discovered' his cause of action, that factual issue should be resolved by the jury in cases in which the plaintiff has asked for a jury." Elam, 594 F.3d at 467. "Although the validity of the defense of statute of limitations is determined by the court as a matter of law, where 'there is a factual issue upon which the application of the statute depends, it is proper to submit the question to the jury.'" Id. (quoting Lynn Mining Co. v. Kelly, 394 S.W.2d 755, 759 (Ky. 1965); see generally 13 Ky. Prac. Tort Law § 10:39 (2009)). Stevens filed her lawsuit on May 10, 2012, so if she discovered or should have discovered the injury before May 9, 2011, this action is barred.

The Medtronic Defendants maintain that Plaintiff's claims against Norton Hospital are barred by the one-year statute of limitations and, as a result, Norton Hospital was fraudulently joined. Defendants argue that Plaintiff knew of her alleged injury well over a year before she filed suit on May 10, 2012. As support, the Medtronic Defendants contend that Plaintiff knew she had spinal surgery on September 13, 2006, and that her "post-operative period was marked by severe painful and debilitating complications." (Complaint ¶¶ 43, 45.) Further, the Medtronic Defendants argue that Plaintiff admits that she discovered Norton Hospital's culpability for her alleged injury through "discussions with the physicians involved" in Stevens's treatment. According to the Medtronic Defendants, these discussions should have occurred within the applicable one-year limitation period. Finally, the Medtronic Defendants contend that publically available documents discussing the potential risks of Infuse were available long before Plaintiff alleges she discovered the injury. (See July 1, 2008, FDA Online Public Health Notification regarding Recombinant Human Bone

Morphogenetic Protein.) According to the Medtronic Defendants, extensive media coverage developed in 2008 concerning the alleged inappropriate relationship between Medtronic and physicians and hospitals and concerning the lawsuits regarding the off-label uses of Infuse. (Medtronic Defendants' Response, Exhibit B.)

While Defendants have raised a potentially valid statute of limitations defense, the Court finds that questions of fact remain as to when Plaintiff discovered or should have discovered her cause of action against Norton Hospital. Elam, 594 F.3d at 467. The fact that Stevens had spinal surgery on September 13, 2006, and that her recovery was "marked by severe painful and debilitating complications" does not, in itself, demonstrate that Stevens discovered or should have discovered she had suffered an injury from the off-label use of Infuse. Similarly, the Medtronic Defendants' stated *belief* that Plaintiff should have discovered the reason for her injury through discussions with her physicians prior to May 9, 2011, does not definitively demonstrate that Stevens discovered or should have discovered the injury. "'[O]ften the patient cannot know whether the undesirable outcome is simply an unfortunate result of proficient medical care or whether it is the consequence of substandard treatment.'" Elam, 594 F.3d at 467 (quoting Harrison v. Valentini, 184 S.W.3d 521, 524 (Ky. 2005)). Additionally, the Medtronic Defendants have presented no evidence that Plaintiff was aware of the FDA Public Health Notification or the media coverage in question. Significantly, Plaintiff states in her Complaint that she "did not know, and could not have known by the exercise of reasonable diligence, until August, 2011 at the earliest that the off-label use of Infuse caused abnormal ectopic bone growth in Crystal Stevens, which in turn caused her ongoing, chronic pain and other complications." (Complaint ¶ 10.) Based on Stevens's lack of medical knowledge and the conflicting evidence submitted by the parties, "a jury should decide when the

9

statute begins to run in accordance with Kentucky law and the Seventh Amendment requiring a jury trial in civil cases at law." Elam, 594 F.3d at 471.

Resolving all contested issues of fact and ambiguities of state law in Plaintiffs' favor, the Court finds that the Medtronic Defendants have not established that Norton Hospital was fraudulently joined and, therefore, complete diversity is lacking and remand is proper.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' motion to remand [DN 8] is **GRANTED**. The case is remanded to the Jefferson Circuit Court.

cc: counsel of record
    Jefferson Circuit Court

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 30, 2012